# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| JOHNNY JOE DeSILVA, JR., ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Case No. 08-cv-4019 |

## O P I N I O N  &  O R D E R

This matter is now before the Court on Petitioner Johnny Joe DeSilva, Jr.'s Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (RII.1).[1] For the reasons set forth below, DeSilva's Motion is DENIED.

### PROCEDURAL HISTORY

As the highest ranking member, or Regional Enforcer, of the Latin Kings gang in the Quad Cities region, DeSilva was responsible for internal discipline and responding to external threats from rival gangs. On September 16, 2004, DeSilva was indicted with five counts: (I) conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; (II) attempted aggravated battery in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(6) and 18 U.S.C. § 2, specifically alleging that DeSilva attempted to commit assault with a

---

[1] References to documents in the record of Case No. 04-cr-4008 are to "RI_"; references to documents in the record of Case No. 08-cv-4019 are to "RII_"; references to the trial transcript are to "Tr.__"; references to the sentencing transcript are to "Sent.Tr.__."

dangerous weapon for the purpose of maintaining his position in the Latin Kings by causing another person to discharge a firearm; (III) using and carrying a firearm in relation to the incident in Count II, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2; (IV) interstate communication of a threat to kidnap in violation of 18 U.S.C. § 875(b); and (V) interstate communication of a threat to injure in violation of 18 U.S.C. § 875(b).  Counts IV and V alleged that DeSilva's threatened to kidnap and injure with the intent to recover thirty pounds of marijuana that had been retained by undercover DEA agents.  (RI.11).

On October 25, 2005, a jury found DeSilva guilty of all five charges and this Court sentenced him to imprisonment for 360 months on Count I, 36 months on Count II, 120 months on Count III, and 240 months on Counts IV and V, all with the exception of Count III to be served concurrently.  (RI.80, RI.90, RI.97).  This Court additionally sentenced DeSilva to 18 months to run consecutive to Count I for violation of supervised release on a prior bank fraud as well as five years of supervised release on Counts I and III, three years on Counts IV and V, and one year on Count II to be served concurrently.  (RI.97).

On February 9, 2006, DeSilva filed a timely notice of appeal (RI.99) to the Seventh Circuit Court of Appeals in which he alleged: (1) the government failed to present sufficient evidence to convict him for committing a violent crime in aid of racketeering activity and the related firearms charge; (2) the Court erred in applying a two-level enhancement for carrying a firearm when sentencing him under Count I because this constituted double punishment, as he was already

sentenced for violation of 18 U.S.C. § 924(c) for carrying a firearm in a drug conspiracy; (3) the Court erred in applying a four-level enhancement for being a leader or organizer of a criminal activity because the participants for whom DeSilva was a leader were not specifically identified; and (4) the government made improper comments in opening and closing statements which deprived DeSilva of a fair trial.

The Seventh Circuit Court of Appeals affirmed the conviction and sentence on October 12, 2007, holding: (1) there is sufficient evidence to support the conviction for committing a violent crime in aid of racketeering activity and for the related firearms charge because a rational trier of fact could have found him guilty beyond a reasonable doubt, *United States v. DeSilva*, 505 F.3d 711, 715 (7th Cir. 2007); (2) the two-level enhancement is appropriate because it was not based on the use of the same firearm as the one serving as the basis for the 924(c) conviction, *id.* at 717; (3) the challenge to the four-level enhancement fails because the record provided "overwhelming evidence" that DeSilva was a leader or organizer of criminal activity involving five or more participants or of an otherwise extensive nature, *id.*; and (4) the government did not make improper opening statement remarks, and even though the prosecutor made some improper remarks during closing, DeSilva failed to meet the plain error burden. *Id.* at 719.

On April 28, 2008, DeSilva filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence in which he contested the Court's jurisdiction and

3

alleged numerous instances of ineffective assistance of counsel.[2] (RII.1) DeSilva's grounds for his ineffective assistance of counsel claim are as follows:

(1) Counsel failed to object to improper comments made by the prosecutor in his opening and closing statements, thereby permitting the jury to consider otherwise inadmissible evidence, depriving DeSilva of a fair trial, and waiving de novo review of the issue on appeal;

(2) Counsel failed to object to the Court's application of a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) and of a four-level enhancement under U.S.S.G. § 3B1.1, thereby exposing DeSilva to an improperly enhanced sentence;

(3) Counsel failed to object to the Court's refusal to grant the jury's request to review a transcript of government witness Manuel Garcia's testimony, which would have increased DeSilva's chance of an acquittal on Counts II and III;

(4) Counsel failed to move for a mistrial or object to the reseating of a juror who had been the recent victim of gang-related vandalism, thereby depriving DeSilva of a fair trial;

(5) Counsel failed to present DeSilva's theory of a defense;

(6) Counsel failed to allow DeSilva to testify to establish the defense; and

(7) Counsel failed to reveal a possible conflict of interest.

---

[2] On October 23, 2008, the Court granted DeSilva's Motion to Amend/Correct Motion to Vacate, Set Aside or Correct Sentence which alleged three instances of ineffective assistance of counsel in addition to the four instances alleged in the original Motion.

4

## DISCUSSION

In order to prevail on a claim of ineffective assistance of counsel, DeSilva must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). Ineffective assistance of counsel claims are to be reviewed under a two-pronged test, in which a defendant must satisfy both prongs to succeed on a § 2255 motion. *Id.*

First, DeSilva must show that counsel made such serious errors that he or she failed to function as the "counsel" guaranteed to a defendant by the Sixth Amendment. *Id.* at 687. The appropriate standard for attorney performance is that of "reasonably effective assistance." *See id.* at 687-88 (explaining that more specific guidelines are inappropriate, as the Sixth Amendment does not specify particular requirements of effective assistance). Judicial scrutiny of counsel's performance must be highly deferential, and courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 689 (noting that there are "countless ways to provide effective in any given case"); *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) (holding that defendants must prove under *Strickland* that they have been denied a fair trial by their counsel's gross incompetence).

Secondly, DeSilva must show that counsel's deficient performance prejudiced him, demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at

5

687. DeSilva would have to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In determining whether prejudice resulted, the court must presume that the judge or jury "reasonably, conscientiously, and impartially [applied] the standards that govern the decision," absent a challenge to the judgment on the grounds of evidentiary insufficiency. *See id.* at 695 (noting that a decision-maker's idiosyncrasies such as an unusual propensity toward harshness or leniency are not relevant to the prejudice inquiry).

Section 2255 proceedings represent a collateral attack on a final judgment and are not looked upon favorably. *See United States v. Springs*, 988 F.2d 746, 747 (7th Cir. 1993). A court cannot evaluate a § 2255 claim unless it is made in a procedurally appropriate manner. *Theodorou v. United States,* 887 F.2d 1336, 1339 (7th Cir. 1989). Namely, § 2255 does not provide relief for the following:

> (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the Section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 720 (7th Cir. 1994).

## ANALYSIS

DeSilva asserted a challenge to the Court's jurisdiction as well as seven instances of ineffective assistance of counsel as grounds for his § 2255 claim.

### A. Lack of Jurisdiction

DeSilva alleges that his indictment must be dismissed for want of territorial jurisdiction. However, this issue is improperly raised in a § 2255 claim. *See Belford*, 975 F.2d at 313. A jurisdictional challenge is a constitutional issue that, in this case, was not raised on direct appeal. *See id.* Additionally, DeSilva did not demonstrate cause for the procedural default or actual prejudice from failing to appeal this issue. *See United States v. Barger*, 178 F.3d 844, 848 (7th Cir. 1999) (requiring a defendant raising a constitutional issue under a § 2255 proceeding to "make a showing of good cause for, and prejudice from, the failure to raise the issues on direct appeal"). Thus, DeSilva's claim on this basis is without merit.

**B. Ineffective Assistance of Counsel**

### 1) <u>Counsel's failure to object to improper comments made by the prosecutor in his opening and closing statements</u>

The comments made by the prosecutor in his opening and closing statements were reviewed for plain error by the Seventh Circuit Court of Appeals on direct appeal. The Seventh Circuit found no error in the prosecutor's opening statement and concluded that DeSilva had not met the plain error standard regarding the prosecutor's improper closing remarks. *DeSilva*, 505 F.3d at 718-19. Having been presented on direct appeal and decided against DeSilva, this issue cannot be reconsidered by the Court absent changed circumstances of fact or law. *See Norris v. United States*, 687 F.2d 899, 900 (7th Cir. 1982). DeSilva has not demonstrated any changed circumstances that could make it possible to regard them as new grounds. Thus, DeSilva is unable to demonstrate that he suffered prejudice as a result of his counsel's alleged failure to object to the prosecutor's opening and

closing statements. Consequently, DeSilva is unable to meet the second prong of *Strickland*, and his claim fails accordingly.

> 2) Counsel's failure to object to the Court's application of a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) and of a four-level enhancement under U.S.S.G. § 3B1.1

The Seventh Circuit Court of Appeals already reviewed the validity of these enhancements and held that both were appropriate. *DeSilva*, 505 F.3d at 717. Namely, the Seventh Circuit found that the two-level firearms enhancement was based on the use of a different firearm from the one serving as the basis for the 924(c) count and therefore did not constitute double punishment. *Id.* It also found that the four-level enhancement was supported by overwhelming evidence from the record that DeSilva acted as an organizer or leader of criminal activity involving five or more participants or was otherwise extensive. *Id.* Given that this claim was decided against DeSilva on direct appeal and that DeSilva did not demonstrate any changed circumstances of fact or law, it cannot be revisited by the Court. *See Norris*, 687 F.2d at 900. Thus, DeSilva is unable to demonstrate that he suffered prejudice as a result of the alleged failure of his counsel to object to the aforementioned enhancements. Consequently, DeSilva is unable to meet the second prong of *Strickland*, and his claim fails accordingly.

> 3) Counsel's failure to object to the Court's refusal to grant the jury's request to review a transcript of government witness Manuel Garcia's testimony

By not objecting in this instance, DeSilva's counsel made a strategic choice grounded in his professional judgment and experience with other juries. After the

Court denied the jury's request to review the transcript of Garcia's testimony, DeSilva's counsel stated his approval of the Court's decision:

> I would concur, Your Honor. I have had this request from other juries before. The problem with granting such a request is next they are going to want the transcript from Mr. Hurtado, next from Mr. Gomez, and, frankly, they aren't supposed to decide the case from transcripts, they are supposed to have listened, paid attention, and make their decision from what they collectively remember.

(Tr. 744-45)

Courts must act under the strong presumption that counsel made reasonable strategic decisions, and a defendant cannot prevail on his claim unless he presents evidence rebutting that presumption. *Strickland*, 466 U.S. at 681. Here, DeSilva does not present evidence to rebut this presumption, as he can only speculate as to the positive effect a review of the transcript would have on his case. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (noting that self-serving testimony is insufficient to support an ineffective assistance claim). Thus, this particular claim is without merit.

> 4) <u>Counsel's failure to move for a mistrial or object to the reseating of a juror who had been the recent victim of gang-related vandalism</u>

DeSilva's counsel's choice to not move for a mistrial or object to the reseating of a juror was an exercise of trial judgment and a reasonable strategic decision. DeSilva's counsel and the Court conducted an extensive inquiry after a juror's car had been vandalized with a gang symbol and other jurors expressed concern that the incident might be traced to DeSilva's gang. On the record, the juror whose car was vandalized stated:

9

> I don't see how what I said or what I heard anybody else say [regarding the graffiti being related to the Latin Kings] would affect me or any of the other jurors in any sort of partial way. I don't see how it would affect what verdict we will have or whether the charges have been proven or not, no.

(Tr. 555)

After questioning of each juror, the Court concluded that the jury remained fair and impartial. DeSilva's counsel agreed and explained why he did not make a motion for mistrial:

> If I may, I'm just thinking ahead, in terms of making a complete record, it may be questioned later why I did not make a motion for a mistrial. I want to make it clear that especially after hearing all these jurors that is, I believe that we still have a fair and impartial panel and that the removal of [a certain juror] will at least minimize the problem that was raised this morning; that I do not believe that having a mistrial and calling a new jury would get a fairer panel of jurors than what we have now, just for the record.

(Tr. 601-02)

This decision by DeSilva's counsel is within the "wide range of reasonable professional assistance" and is to be presumed a reasonable strategic choice unless DeSilva presents evidence rebutting that presumption. *Strickland*, 466 U.S. at 689; *see also Galowski v. Murphy*, 891 F.2d 629, 639 (7th Cir. 1989) ("The decision whether to move for a mistrial or instead to proceed to judgment with the expectation that the client will be acquitted is one of trial strategy."). Because DeSilva provided no evidence demonstrating otherwise, he has not met his burden of proving that his counsel was ineffective by failing to move for a mistrial or object to the reseating of a juror.

### 5) Counsel's failure to present DeSilva's theory of a defense

DeSilva alleges that his counsel merely told the jury that he was trafficking marijuana but failed to develop his defense that he was trafficking marijuana and not cocaine. However, DeSilva not only fails to show what additional evidence should have been presented in his defense, but he can only speculate as to whether the additional evidence would have resulted in a different verdict. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (noting that "self-serving testimony" is insufficient to demonstrate prejudice under *Strickland*). Thus, this argument is without merit.

6) Counsel's failure to allow DeSilva to testify to establish the defense

This allegation is contradicted by DeSilva's informed and voluntary decision to waive his right to testify at trial. DeSilva's counsel stated on the record that over the course of "many many days," they discussed with DeSilva the pros and cons of testifying versus not testifying. (Tr. 688). The Court directly asked DeSilva whether he realized he had the right to testify or not testify on his behalf, whether his attorney discussed the pros and cons of both approaches, whether he fully understood his right to testify, and whether it was his voluntary choice not to testify in this case. (Tr. 688-690). DeSilva responded in the affirmative to all aforementioned inquiries. (Tr. 688-690). Given this clearly contradictory evidence, DeSilva's allegation that his counsel failed to allow him to testify is without merit.

7) Counsel's failure to reveal a possible conflict of interest

DeSilva alleges that his counsel's failure to reveal the possible conflict of interest that they had represented government witness Ramon Morales prior to

11

DeSilva's trial resulted in ineffective assistance of counsel.  In order to prevail on this claim, DeSilva must prove prejudice by demonstrating that an "actual conflict of interest adversely affected the adequacy of his representation."  *See Cuyler v. Sullivan*, 446 U.S. 335, 336 (1980) (clarifying that the "possibility of a conflict of interest is insufficient to impugn a criminal conviction").  Here, DeSilva fails to provide any facts to suggest that an actual conflict of interest existed, much less demonstrate that the alleged conflict adversely affected his counsel's performance.  Mr. Morales was notably not listed on the government's witness list and did not testify in DeSilva's trial.  Without any information that Mr. Morales was even a government witness, DeSilva's allegation is speculative and without merit.

### C. Evidentiary Hearing Request

An evidentiary hearing on a Section 2255 motion is not mandatory.  *Daniels v. United States*, 54 F.3d 290, 293 (7th Cir. 1995).  In order for an evidentiary hearing to be granted, DeSilva must support his allegations with detailed evidence from the record.  *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (holding that mere unsupported allegations are insufficient to sustain a request for a hearing).  Motions to vacate should be dismissed without a hearing if allegations in the petition are unreasonably vague, unreliable, or conclusory.  *See Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992); *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992).  DeSilva's aforementioned speculative and at times contradictory allegations lack adequate support from the record.  Thus, DeSilva

fails to raise his allegations above the level of merely unsupported assertions and may not obtain an evidentiary hearing.

## CERTIFICATE OF APPEALABILTY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(1), a petitioner may only appeal from the court's judgment in his section 2255 case if he obtains a certificate of appealability. A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner need not show that the appeal will succeed, but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). Further, where the district court denies a petition on procedural grounds, such as untimeliness, a petitioner must make a showing that reasonable jurists "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. If the district court denies the request, a petitioner may request that a circuit judge issue the certificate. FED. R. APP. PROC. 22(b)(1).

Based upon the record before it, the Court cannot find reasonable jurists would debate that DeSilva's petition fails to establish adequate grounds for relief under Section 2255. For the reasons mentioned, *supra*, it is beyond dispute that Petitioner's assignment of errors are either procedurally barred, improperly raised in a Section 2255 motion, and/or are baseless and without merit. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (RII.1) is DENIED,[3] and the Court DECLINES to issue a certificate of appealability. IT IS SO ORDERED.

CASE TERMINATED.

Entered this 2nd day of August, 2011.

                                                    s/ Joe B. McDade
                                                    JOE BILLY McDADE
                                                    United States Senior District Judge

---

[3] Petitioner currently has a number of other motions pending before the Court, which are as follows: Motion to Supplement (Doc. 11); Motion to Consider the Government's Failure to Respond as a "Confession of Error" (Doc. 12); Motion to Supplement (Doc. 13); and Motion Pursuant to Rule 15(c)(2) (Doc. 14). Petitioner's Motions to Supplement (Doc. 11) and (Doc. 13) are DENIED because they do not bear on the question of ineffective assistance of counsel and because the Court has concluded that such claim is without merit. Petitioner's Motion to Consider the Government's Failure to Respond as a "Confession of Error" (Doc. 12) is not a "motion" at all and, consequently, is DENIED. Finally, Petitioner's Motion Pursuant to Rule 15(c)(2) (Doc. 14) seeks to "reopen his timely filed petition filed with this Court." (Doc. 14 at 7). In light of the fact that Petitioner's case was never closed and has remained open to date, this motion is DISMISSED as MOOT.